UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD BURDETTE,

    Plaintiff,

v.                                                                                                  Case No: 8:18-cv-1634-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Richard Burdette, seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits. As the Commissioner's decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### **A.    Procedural Background**

Plaintiff filed an application for a period of disability on December 31, 2014. (Tr. 18, 179–80.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 18, 104–05, 108–09.) Plaintiff then requested an administrative hearing. (Tr. 113–14.) Upon Plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff appeared and testified. (Tr. 32–73.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 18–27.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council granted. (Tr. 171–74.) Upon review, the Appeals Council still found Plaintiff not

disabled. (Tr. 4–7.) Plaintiff then timely filed a Complaint with this Court. (Dkt. 1) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1958, claimed disability beginning on January 1, 2013. (Tr. 179.) Plaintiff has a master's degree. (Tr. 37.) Plaintiff's past relevant work experience included work as a field contractor. (Tr. 26.) Plaintiff alleged disability due to chronic bilateral hip pain, history of left hip replacement, back and leg pain, history of lumbar fusions, and hypertension. (Tr. 226.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 1, 2013, the alleged onset date. (Tr. 20.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: "spinal disorders, bilateral hip pain/major joints dysfunction." (Tr. 21.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to

> lift and/or carry 20 pounds occasionally and 10 pounds frequently. Stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday (with normal breaks). The claimant can frequently climb ramps and stairs and frequently climb ladders and scaffolds. He is unlimited in his ability to push/pull, balance and kneel and can frequently stoop, crouch and crawl.

(Tr. 22.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. (Tr. 23.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 26.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as toll collector, scale attendant, and food order clerk. (Tr. 27.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 27.)

Upon review, the Appeals Council adopted the majority of the ALJ's decision but found that based on Plaintiff's age and work experience, a finding of disabled would be directed by the rules. (Tr. 5.) Nonetheless, the Appeals Council rejected the ALJ's finding that Plaintiff could not perform his past relevant work. (Tr. 5.) Instead, based on the testimony of the VE, the Appeals Council found that Plaintiff could perform his past relevant work and accordingly found Plaintiff not disabled. (Tr. 6.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.

20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis,

mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the Commissioner's decision on the following grounds: (1) the ALJ erred in formulating the RFC; and (2) the ALJ erred in giving partial weight to the opinion of Dr. Kutner. For the reasons that follow, neither contention warrants reversal.

### A. RFC

Plaintiff argues that the RFC is not supported by substantial evidence. (Dkt. 14 at 14.) Specifically, Plaintiff argues that the RFC does not properly account for his limitations in standing and lifting. (Dkt. 14 at 14–15.) A claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). Where the RFC is supported by substantial evidence, this Court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."). Here, the RFC is supported by substantial evidence.

Plaintiff alleges disability as of January 1, 2013, after he was laid off from his full-time job. (Tr. 36–37.) However, the record indicates that Plaintiff suffered from back problems as early as 2012. (Tr. 641.) After the pain worsened, Plaintiff underwent a multi-level lumbar

laminectomy and instrumented fusion (L2-L5) on June 20, 2013. (Tr. 302, 368.) The surgery went well, and Plaintiff was discharged with a brace and a walker. (Tr. 383.)

On July 3, 2013, Plaintiff's follow-up examination found that he was "doing well" and his pain was controlled with medication, which he did not think he would need much longer. (Tr. 401.) Plaintiff was "increasing his activity as tolerated with no major complaints." (Tr. 401.) Plaintiff had another follow-up appointment in August of 2013, at which he was doing "very well" and reported "excellent resolution of his pre-operative radicular leg symptoms." (Tr. 405.) Because of his "excellent recovery," he "stopped taking analgesic medications regularly" and "started advancing his daily activity levels with no untoward effects." (Tr. 405.) Plaintiff's pain was "significantly improved following surgery" and Plaintiff "appeared very pleased with the progress to date." (Tr. 405.)

As such, Plaintiff discussed "activity progression and return to work guidelines." (Tr. 405.) "He was advised to gradually progress with his daily physical activities as tolerated but to avoid any significant lifting (beyond 10-15 [pounds]) or any sustained pulling, pushing bending, or stooping for another few weeks." (Tr. 405) He was also advised "as to the appropriate set of exercise and physical therapy," advised to "wean off" his back brace, and referred to physical therapy, with no further follow-up examination. (Tr. 405.) The record indicates no abnormal musculoskeletal findings through 2015. (Tr. 443, 454.)

On March 9, 2015, Plaintiff drove himself to a consultative examination with Dr. Morris Kutner. (Tr. 458–60.) Plaintiff reported being "able to take care of himself and do his own activities of daily living such as cooking, cleaning, and shopping." (Tr. 458.) Plaintiff's "[r]ange of motion of the cervical spine, lumbar spine, shoulders, elbows, writs, hands, hips, knees, ankles, and toes were all within normal limits with no limitations." (Tr. 459.) Plaintiff "did not require

any assistive devices to ambulate, his "[t]andem walk was intact," and he "had no difficulty getting up from a chair on and off the exam table." (Tr. 59.)

On May 7, 2015, Plaintiff saw Dr. Douglas Shenkman for hip pain. (Tr. 284.) Dr. Shenkman noted "grossly normal neuromotor function," "adequate maintenance of the joint," and recommended a stretching regimen. (Tr. 286.) At a follow-up on June 25, 2015, Plaintiff noted improvement, was "walking somewhat better than before" and, other than some tenderness, was "neurovascularly unchanged." (Tr. 611.) At another follow-up on July 29, 2015, Plaintiff reported "doing better." (Tr. 614.) He was "neurovascularly grossly intact," was "walking fairly well," and had "no gross instability about the hips or knees." (Tr. 614.) Plaintiff had another follow-up on December 21, 2015, where he had tightness and tenderness, but admitted he was "not stretching" as "much as he was before." (Tr. 620.) He was referred to a neurologist and for physical therapy. (Tr. 620.)

At physical therapy, Plaintiff reported he got "most of his symptoms sitting," but reported that the physical therapy helped. (Tr. 467, 469.) However, in March of 2016 he was discharged due to an inability to pay. (Tr. 471.) On April 3, 2016, he was admitted to the hospital with a myocardial infarction. (Tr. 488–90.) Plaintiff underwent a coronary bypass and was discharged on April 15, 2016. (Tr. 481, 52, 532.) In May of 2016, Plaintiff established care with Dr. Ravi Srivastava, for heart surgery-follow-up, and with Dr. Agustin Tavaras, for primary care. (Tr. 624, 628.) Dr. Tavares encouraged Plaintiff "to exercise five days a week for [thirty minutes] a day." (Tr. 630.) On May 24, 2016, Dr. Srivastava cleared Plaintiff for cardiac rehab after an "[e]lectrically negative stress test." (Tr. 632.) In November of 2018, Plaintiff scheduled "elective" surgery to remove sternal wires and a malunion. (Tr. 665–748.)

In addition to the objective evidence, the ALJ also relied on opinion evidence in formulating the RFC. The ALJ noted that "no treating doctor reported that the claimant was disabled or unable to work for the period under adjudication." (Tr. 25.) Notably, Plaintiff has continued to work after his back surgery. (Tr. 43–47.) Additionally, the ALJ relied on and gave great weight to the opinion of the state agency medical consultant, Dr. Suzanne Johnson, who opined that Plaintiff was "capable of a wide range of medium work with frequent postural restrictions." (Tr. 25.) Yet, based on updated medical records, the ALJ found Plaintiff more restricted. (Tr. 25.)

In arguing that Plaintiff is more limited than the RFC, Plaintiff points to the opinion of Dr. Kutner and Plaintiff's own testimony. (Dkt. 13 at 18.) However, as discussed below the ALJ properly gave limited weight to Dr. Kutner's opinion, *see* discussion *infra* Section B, and the ALJ found Plaintiff's subjective complaints to be only "partially consistent with the evidence of record.[1] (Tr. 25.) Additionally, Plaintiff argues that the RFC should have included a "sit/stand" option because Plaintiff can "not stand and walk on an uninterrupted basis for 6 out of 8 hours." (Dkt. 13 at 18–19.) However, the RFC states that Plaintiff can "[s]tand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday (*with normal breaks*). (Tr. 22) (emphasis added.) Plaintiff cites to no opinion that purports to require a "sit/stand option."

Because the ALJ properly exercised his duty to formulate the RFC, which is supported by substantial evidence, this Court may not reweigh the evidence. *See Bloodsworth*, 703 F.2d at 1239; *see also Lewis*, 125 F.3d at 1439; *Martin*, 894 F.2d at 1529.

---

[1] Plaintiff does not challenge this finding. *See Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011) (finding an issue not presented to the district court to be waived).

### B. Dr. Kutner's Opinion

Next, Plaintiff argues the ALJ erred in giving limited weight to the opinion of Dr. Kutner. (Dkt. 13 at 19–20.) In evaluating medical evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). When determining how much weight to afford an opinion, the ALJ considers (1) whether there is an examining or treatment relationship and the nature and extent thereof; (2) whether the source offers relevant medical evidence to support the opinion; (3) consistency with the record as a whole; (4) the specialization of the source, if any; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015). However, the opinions of a non-treating or non-examining physician are given less weight than those of examining or treating physicians and, standing alone, do not constitute substantial evidence. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009).

Plaintiff argues that the ALJ should have incorporated into the RFC Dr. Kutner's opinion that Plaintiff "could not perform work that required bending, stooping or lifting of more than 10 pounds on a frequent basis." (Dkt. 13 at 19.) However, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). While opinion evidence is helpful, it is not dispositive. *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008); *see also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. 2014) (explaining that "the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion")

(emphasis in original). Thus, the ALJ was not required adopt all of Dr. Kutner's conclusions. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) ("A doctor's opinion on dispositive issues reserved to the Commissioner . . . is excluded from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source.").

Additionally, the ALJ articulated several reasons for giving less weight to Dr. Kutner's opinion. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (affirming "because the ALJ articulated at least one specific reason for disregarding the [treating physician's] opinion and the record supports it"). First, the ALJ's found that Dr. Kutner's opinion was "somewhat inconsistent with his own findings on examination." (Tr. 25.) Notably, Dr. Kutner did not have access to any of Plaintiff's medical records but relied on Plaintiff as an apparently "reliable historian" (Tr. 468). *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (affirming the decision to discount an opinion that appeared "to be based primarily on [the plaintiff's] subjective complaints of pain").

Upon examination, Dr. Kutner found "no evidence of any arthritis in any of his extremities," and that his "upper extremities had a normal five over five-grip strength." (Tr. 459.) "There was no evidence of any edema" in the lower extremities. (Tr. 459.) Although Plaintiff had a well-healed surgical scar on his hip, Dr. Kutner found "no evidence of arthritis" and "no heat, inflammation or tenderness in any joint." (Tr. 459.) Plaintiff's "[r]ange of motion of the cervical spine, lumbar spine, shoulders, elbows, wrists, hands, hips, knees, ankles and toes were all within normal limits with no limitations." (Tr. 459.) "Straight leg raising test and knee bending tests were negative." (Tr. 459.) Additionally, Plaintiff "did not require any assistive devices to ambulate," his "[t]andem walk was intact," and he "had no difficulty getting up from a chair on

and off the exam table." (Tr. 459.) In light of these objective findings, substantial evidence supports the ALJ's decision to discredit Dr. Kutner's extreme limitations.

Second, the ALJ also found that Dr. Kutner's opinion was inconsistent with Plaintiff's activities of daily living. (Tr. 25.) As noted by the ALJ, Plaintiff reported being able "to perform personal care/grooming and do all domestic household chores to include sweeping and cleaning floors, and doing laundry." (Tr. 23.) He also "drives unaccompanied to go places," "shops when necessary," and "enjoys watching TV and reading." (Tr. 23.) Most notably, Plaintiff reported working since 2014, after his surgery, including as a high school substitute teacher. (Tr. 23, 43–47.) These daily activities provide substantial evidence to support the ALJ's decision to discredit Dr. Kutner's opinion. *See Moore v. Barnhart*, 403 F.3d 1208, 1212–13 (11th Cir. 2005) (affirming the ALJ's decision to discredit a treating physician's opinion based, in part, on the plaintiff's daily activities).

Third, the ALJ also found that Dr. Kutner's opinion was inconsistent with the medical evidence of record. (Tr. 25.) And as discussed above, the ALJ's formulation of the RFC, based on the medical evidence of record, is supported by substantial evidence. *See* discussion *supra* Section A. Therefore, because the ALJ stated "with particularity the weight given to" Dr. Kutner's opinion and "the reasons therefor," *see Winschel*, 631 F.3d at 1179, and because those reasons are supported by substantial evidence, the ALJ's decision must be affirmed. *See also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) (holding that a "treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**; and

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on September 4, 2019.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record